**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| CLEVELAND MHC, LLC, <br><br> PLAINTIFF, <br> V. <br><br> LEGACY HOUSING CORPORATION, AND JEFFREY V. BURT, TRUSTEE <br><br> DEFENDANTS. | CASE NO. 3:18-CV-109-DPJ-ASH <br><br> HON. DANIEL P. JORDAN III |

### FIRST AMENDED COMPLAINT

Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff Cleveland MHC, LLC amends its complaint as follows:

1. In conducting a foreclosure sale of a property owned by Plaintiff, Defendants failed to follow black-letter Mississippi law requiring that the sale take place exactly one week from the last of a series of three consecutive newspaper advertisements promoting the sale. Instead, Defendants conducted the purported foreclosure sale only five days after the last of three publications. This rendered the sale null and void and amounts to a wrongful foreclosure under Mississippi law. It also enabled Defendants—who are embroiled with Plaintiff and its owners and affiliates in a much larger dispute that spans several mobile-home developments across the southern United States and is a part of a twelve-year commercial relationship—to attempt to gain undue leverage and an unfair advantage in the larger dispute by purporting to acquire the property at the wrongful foreclosure sale for a fraction of its fair market value—a value that was not commercially reasonable.

2. After taking possession of the wrongfully foreclosed property, Defendants proceeded to tortiously interfere with Plaintiff's business relations with its employee, by instructing Plaintiff's employee who manages the subject property that he "works for [Defendant Legacy] now" and must cease all communications with Plaintiff. These statements were false and malicious and caused the employee to abruptly cease communications with Cleveland.

3. Defendants have also failed to provide Plaintiff with an accounting of the debt underlying the deed of trust on the property, which is necessary to enable Plaintiff to pay off the underlying debt and thereby release the subject property from the deed of trust, as Plaintiff is entitled to do at any time.

4. Plaintiff has therefore initiated this action for wrongful foreclosure, breach of contract, tortious interference with business relations, accounting, declaratory judgment, and attorneys' fees, whereupon it seeks, among other remedies, damages and a declaratory judgment invalidating the sale.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff Cleveland MHC, LLC ("Cleveland"), is a Mississippi limited liability company doing business in Rankin County, Mississippi. Its members are citizens of Mississippi, New York and Louisiana.

6. Defendant Legacy Housing Corporation ("Legacy") is a Texas corporation with its principal place of business in Tarrant County, Texas.

7. Defendant Jeffrey V. Burt ("Burt"), sued in his capacity as named Trustee in the deed of trust that is the subject of this lawsuit, on information and belief is a citizen of Texas.

2

8. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and neither of the Defendants are citizens of the same state as Plaintiff.

9. The Court has specific personal jurisdiction over each Defendant because all of the actions giving rise to Plaintiff's claims were carried out within Mississippi by Defendants or their agents, and the wrongfully foreclosed property is located in Mississippi. Defendants also submitted to personal jurisdiction in Mississippi by filing a motion to dismiss Plaintiff's original Complaint without raising lack of personal jurisdiction as a defense.

10. Venue is proper in the Southern District of Mississippi, Northern Division, under 28 U.S.C. § 1391(b)(2), because the property that was wrongfully foreclosed on by Defendants is located in Rankin County, Mississippi, and Defendants' tortious interference with Cleveland's business relations with its employee occurred on the premises of the subject property in Rankin County, Mississippi. Thus, "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this District and Division, and "a substantial part of property that is the subject of the action is situated" in this District and Division.

## FACTS

11. Cleveland and its affiliates have been doing business with Legacy for well over twelve years. Cleveland and its affiliates develop and operate mobile-home communities across the southern United States, including in Mississippi, Louisiana and Texas. Legacy is primarily a manufacturer of mobile homes and, as such, has been a long-

time supplier and financial partner to Cleveland and its owners and affiliates, and has profited tremendously from this relationship over the years.

12. Legacy regularly offers financing to its commercial partners in exchange for commitments to purchase large quantities of manufactured homes from Legacy. One such financing transaction was executed through a January 4, 2019 promissory note (the "Note"), pursuant to which Cleveland borrowed $950,000.00 from Legacy in connection with the purchase of Legacy manufactured homes to be used at the Cleveland Mobile Home Community (the "Cleveland Park"), located at 110 Old Highway 49 South, Richland, Mississippi (the "Property").

13. Cleveland's plan for the Cleveland Park over the next four years is to expand it from a 160-lot community with twenty rental homes to a 190-lot community with 150 rental homes.

14. The Note matured on or around January 4, 2024. Until maturity, Cleveland made monthly, interest-only payments per the terms of the Note.

15. It has been the custom and practice of the parties, including Cleveland's affiliates who have entered into numerous loan and sale-of-goods agreements with Legacy over the years, that the parties continue to extend the maturity date on loans and continue to pay interest only until a particular development is completed. Whereas Legacy has customarily treated such extensions as a given without any formal confirmation, it has often been Cleveland's affiliates that have insisted on formalizing such extensions in writing.

16. In this case, Cleveland's expectation was that, just like numerous other maturity dates that had been extended in the past, the Note's maturity would be

extended past January 4, 2024, to permit the expansion of the Cleveland Park to continue to progress. Progress of the Cleveland Park expansion benefits Legacy because it is entitled to be the exclusive supplier of new homes to the Cleveland Park. Indeed, just a few months before the January 4, 2024 maturity date, Legacy's Chairman of the Board, Curtis Hodgson, asked Cleveland's managing member to agree, on behalf of Cleveland, to pay for and receive dozens of new homes at the Cleveland Park. Based on the prior course of dealing of the parties and their affiliates, this request would only have made sense if Legacy had intended to extend maturity on the Note, which was always Cleveland's reasonable expectation.

17.   The Note is secured by a January 4, 2019 Deed of Trust on the Property (the "Deed of Trust"). The Note references the Deed of Trust in Section 12 of the Note and the two documents were executed on the same day as part of a single transaction. True and correct copies of the Note, Deed of Trust and other ancillary documents that were part of the "closing package" related to January 4, 2024 transaction are attached as <u>Exhibit A</u> to this complaint.

18.   The Note is to be "governed by, and construed and interpreted in accordance with the law of the State of Texas." (Note § 16.) Given that the Note and Deed of Trust were executed at the same time as part of a single transaction, the choice-of-law provision in the Note also applies to the Deed of Trust, except where the Deed of Trust specifies application of Mississippi law in connection with notice of a foreclosure.

19.   The Deed of Trust names Cleveland as the Grantor, Legacy as the Beneficiary, and Burt as Trustee.

20. Cleveland, and several affiliated mobile-home-community developers are presently in a larger dispute with Legacy relating to the parties' respective rights and obligations across several development and supply agreements. At the time of this filing this includes a lawsuit filed by Legacy in the Northern District of Texas, Case No. 4:24-cv-00096-P (the "Texas Action"), which Cleveland (and its co-defendants) have moved to dismiss for failure to state a claim. The Texas Action does not directly relate to the Note or the Deed of Trust and arises out of a separate series of transactions and occurrences than the present action.

21. Pursuant to the Note, Legacy is entitled to a default interest rate of 17.5 percent per annum for late payments, more than twice the non-default rate of 8.0 percent per annum. This default interest rate is the mechanism by which the parties dealt with late payments over their twelve-year relationship.

22. Alternatively, one of "Beneficiary's Rights" under the Deed of Trust is that, upon a default by Cleveland, Legacy may request that the Trustee foreclose on the lien created by the Deed of Trust, provided it "give[s] notice of the foreclosure sale as provided under the laws of Mississippi."

23. In the twelve-year relationship between Legacy and Cleveland and its affiliates, Legacy had never foreclosed on any security interest it held.

24. At all times prior to a valid foreclosure sale, Cleveland may redeem the Property from the Deed of Trust by paying all outstanding amounts due on the underlying obligations, at which point the Deed of Trust "shall have no further effect, and [Legacy] shall release it" to Cleveland.

25. With the expectation that the parties would extend the maturity date on the Note consistently with the course of dealings of the parties and their affiliates as set forth above, Cleveland did not pay the Note balance on the January 4, 2024 maturity date.

26. Just five days later, on January 9, 2024, without any warning or notice to Cleveland, and, on information and belief, motivated primarily by a larger dispute that had recently arisen between the parties (including Cleveland's affiliates), Defendants, through their agents, caused a notice of sale to be posted at Rankin County's courthouse, known as the Rankin County Justice Center (the "Sale Notice").

27. The Sale Notice set the date and time of the foreclosure sale as February 5, 2024, at 11:00 a.m.

28. In addition to the Sale Notice, the Trustee directed the publication of an advertisement for the February 5 sale in a publication called The Rankin County News on three separate occasions: January 17, January 24, and January 31 (the "Newspaper Ads").

29. In accordance with the Sale Notice and the Newspaper Ads, the foreclosure sale of the Property was conducted on February 5, 2024. It was held at the Rankin County Justice Center. On information and belief, Legacy was the only bidder and purported to purchase the Property for $800,000.

30. The fair market value of the Property is approximately three times (3x) the value Legacy paid for it in the foreclosure sale.

31. As set forth in more detail below (paragraphs 38 through 41), the purported foreclosure sale was invalid under Mississippi law and Legacy did not acquire valid title at the sale.

32. Cleveland was first notified of the foreclosure sale on February 5, 2024, after it had already taken place.

33. Prior to being notified of the sale, Cleveland had a soft commitment from a potential financial partner to invest in the expansion of the Cleveland Park, including by paying off the Note, and by providing financing to expand the Cleveland Park as set forth in paragraph 13, above. Once the financial partner was made aware of the purported foreclosure sale, however, it indicated to Cleveland that it would no longer proceed.

34. As a result of the improper and invalid foreclosure sale, Cleveland has lost multiple opportunities to attract investors and/or lenders who would otherwise be prepared to finance the planned expansion of the Cleveland Park, including a payoff of the Note. This is because of the appearance that Legacy has already taken title to the Property—a false appearance which this suit seeks to correct.

35. Immediately after Legacy purported to take title pursuant to the foreclosure sale, it wrongfully and tortiously took and holds possession of the Property. Until that point, Cleveland operated the Cleveland Park on the Property, using its employees as property managers. On or around February 5, 2024, agents of Legacy entered the property and told a Cleveland employee that the employee "works for [Legacy] now," and that the employee was no longer permitted to communicate with Cleveland. That was false. At best, Legacy would have acquired a property at a foreclosure sale (and even that it did not do validly)—but in no event did Legacy acquire Cleveland or its employees. As a result of these false assertions, Cleveland's employee ceased all communications with Cleveland.

36. Despite asserting to the employee that he "works for Legacy now," Legacy did not assume Cleveland's obligations to pay him a salary, and Cleveland was compelled to pay the employee's compensation for the first two weeks of February, during which time he was effectively working exclusively for Legacy.

37. Cleveland is prepared to pay off the remaining balance of the Note but has not been provided with an accurate payoff number. On at least two occasions since the Maturity Date, Cleveland has submitted written requests in writing to Legacy, asking for an accounting, which would have shown (if provided), among other critical information, the sums that would be required to pay off all outstanding obligations. At the time of this filing, nearly a month has elapsed since Cleveland first made a request for an accounting.

## COUNT I
(Wrongful Foreclosure)

38. Cleveland repeats and realleges paragraphs 1 through 37 above, as if fully set forth herein.

39. Legacy's attempted foreclosure on February 5, 2024, constitutes a wrongful foreclosure under Mississippi law because Defendants failed to follow the requirements of Miss. Code Ann. § 89-1-55 ("Section 89-1-55") in conducting the sale. Section 89-1-55 provides that "No sale of lands under a deed of trust or mortgage, shall be valid unless such sale shall have been advertised as herein provided for, regardless of any contract to the contrary." Section 89-1-55 further provides that a newspaper advertisement of the sale "shall be advertised for three (3) consecutive weeks preceding such sale," which means, to be valid, the sale would have needed to "occur one week following the last day of publication" (*Thrash v. Deutsch, Kerrigan & Stiles*, LLP, 2014-CA-01472-SCT (Miss.

2016)). Defendants failed to follow the requirements of Section 89-1-55 by conducting the sale only five (5) days following the last of three newspaper publications, rendering the sale invalid and the foreclosure wrongful.

40. Separately and independently, Legacy's negligence in failing to conduct the sale in accordance with Section 89-1-55 led to Legacy purportedly acquiring the property at the radically below-market price of $800,000. It also led to Cleveland's loss of potential investors and lenders in connection with the expansion of the Cleveland Park. Legacy's negligence in conducting the sale is another reason it constituted a wrongful foreclosure.

41. Separately and independently, Legacy conducted its February 5, 2024 foreclosure solely for the malicious desire to injure Cleveland by gaining leverage in a broader dispute between the parties involving numerous mobile-home community developments, and by attempting to earn a windfall by forcing a self-interested sale of the Property at a radically below-market price. Consequently, the February 5, 2024 sale constitutes wrongful foreclosure under Mississippi law.

## COUNT II
(Breach of Contract under Texas Law)

42. Cleveland repeats and realleges paragraphs 1 through 37 above, as if fully set forth herein.

43. A valid contract between the parties exists, namely, the Deed of Trust and the Note, which together comprise a single agreement (the "Agreement").

44. The Agreement is governed by Texas law per Section 16 of the Note.

45. The "Trustee's Duties" provision of the Deed of Trust requires "notice of the foreclosure sale as required by the laws of Mississippi" prior to any foreclosure sale.

46. The laws of Mississippi require a notice of the foreclosure sale to be published in a newspaper for a "three (3) consecutive weeks preceding" such sale. This means there must be a full week from the final publication to the sale or, stated differently, three weeks from the first publication to the foreclosure sale. *Osborne v. Neblett*, 65 So. 3d 311, 313 (Miss. Ct. App. 2011) ("Section 89–1–55 clearly requires three weeks between the first publication and the foreclosure sale. … failure to comply with the statute's publication requirements renders a foreclosure sale void.").

47. Defendants breached the Agreement by failing to comply with the Mississippi law and conducting the sale only five (5) days after the last of three newspaper publications.

48. Cleveland has been damaged by Defendants' breach, including by losing committed investors and the opportunity to attract investors who would have paid off the Note, expand the Cleveland Park as planned, and/or the opportunity to sell the Property at a much higher, fair-market price, rather than the grossly insufficient price Legacy paid for it.

## COUNT III
(Tortious Interference with Business Relations against Legacy)

49. Cleveland repeats and realleges paragraphs 1 through 37 above, as if fully set forth herein.

50. Before the foreclosure sale and Defendant Legacy's taking possession of the Property, Cleveland had a business relationship with its manager on-site at the Cleveland Park.

51. Defendant Legacy acted intentionally and willfully in communicating with Cleveland's employee, making false statements regarding Legacy's purported status as

11

his employer, and intimidating him into ceasing communications with his actual employer, Cleveland.

52. These acts were done with the unlawful purpose of causing damage and loss to Cleveland without any right or justifiable cause on the part of Defendant Legacy. Even if Legacy owned the property pursuant to the sale (it did not), Legacy did not thereby acquire ownership of Cleveland or its employees.

53. Actual loss and damage resulted from Defendant Legacy's tortious acts, including because Cleveland paid the employee's salary for his work on behalf of Legacy.

## COUNT IV
(Accounting)

54. Cleveland repeats and realleges paragraphs 1 through 37 above, as if fully set forth herein.

55. Defendants have a duty to account to Cleveland for all components of Cleveland's obligations to Defendants with respect to the Note and Deed of Trust and, specifically, a duty to account for the amount Cleveland would need to pay in order to fully pay off the Note.

56. Legacy's duty to account to Cleveland arises under Chapter 9 of the Texas Business & Commerce Code, which codifies the Texas Uniform Commercial Code provisions applying to secured transactions such as the Note. Under those provisions, Legacy, as the secured party, was obligated to "identify[] the components of the [debt] obligations in reasonable detail" within 14 days after receiving a request for accounting from Cleveland (Tex. Bus. & Com. Code § 9.102), and failure to do so entitles Cleveland

to a court order that would "restrain collection, enforcement, or disposition" of the Property serving as collateral as well as to statutory damages (*id.* § 9.625(a)).

57. Mississippi law, to the extent it would apply, also imposes a duty on Legacy to account to Cleveland, and no foreclosure sale may validly occur prior to Cleveland's receipt of such accounting.

58. Cleveland has made multiple demands for an accounting with respect to the loan underlying the Note and Deed of Trust. Defendants have thus far ignored Plaintiff's demands and failed to provide an accounting. That failure has continued well over fourteen days.

## COUNT V
### (Declaratory Judgment)

59. Cleveland repeats and realleges paragraphs 1 through 37 above, as if fully set forth herein.

60. An actual controversy has arisen regarding the validity of the February 5, 2024 purported foreclosure sale, and the resulting ownership of title to the Property.

61. Cleveland requests that the Court declare the rights of the parties with respect to that transaction. In particular, the Court should declare the February 5, 2024 sale, and any deed or other instrument issued on the basis of such sale, null, void and of no effect.

## COUNT VI
### (Attorneys' Fees under Texas Law)

62. Cleveland repeats and realleges paragraphs 1 through 37 above, as if fully set forth herein.

63. The Note, and by incorporation and concurrent execution, the Deed of Trust, are governed by Texas law pursuant to Section 16 of the Note.

64. Under § 38.001 of the Texas Civil Practice and Remedies Code, a party may recover its reasonable attorneys' fees if it prevails on a breach of contract claim, regardless of whether the contract itself includes an attorneys' fees provision.

65. As a prevailing party in the breach of contract claim asserted herein, Plaintiff is entitled to its reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

Wherefore, Cleveland prays that judgment be entered in its favor and against Defendants follows:

1. With respect to all counts, that judgment be entered against defendants;

2. For actual and compensatory damages according to proof;

3. For restitution and disgorgement;

4. For punitive damages;

5. For statutory damages under Tex. Bus. & Com. Code § 9.625(a);

6. For a declaratory judgment, declaring the sale of the Property by Defendants, and any deed or other instrument issued on the basis of such sale, null, void and of no effect;

7. For an injunction that would enjoin any purported transfer of the property by Defendants, and that would enjoin "collection, enforcement, or disposition" of the Property pursuant to Tex. Bus. & Com. Code § 9.625(a);

8. For pre- and post-judgment interest as provided by law;

9. For reasonable attorneys' fees and costs as allowed by law; and

10. For such further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Cleveland hereby demands, pursuant to Fed. R. Civ. P. 38(b), a trial by jury on all issues so triable.

Dated: March 21, 2024

                                                   */s/ Paul E. Rogers*

(electronically signed by ECF filer Eliyahu Ness with consent of Paul E. Rogers)

Paul E. Rogers, MSB No. 5649
Rogers, Ainsworth & Williams, PLLC
567 Highway 51, Suite B
Ridgeland, Mississippi 39157
Phone: (601) 969-7777
Fax: (601) 352-8658
paul@rogersawlaw.com

Eliyahu Ness (*admitted pro hac vice*)
NESS PLLC
3232 McKinney Ave
Dallas, TX 75204
Phone: (469) 319-1355
Fax: (469) 319-1355
eness@nesslegal.com

*Attorneys for Cleveland MHC, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that that on March 21, 2024, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Eliyahu Ness*
Eliyahu Ness (*admitted pro hac vice*)
